UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

------------------------------------------------------x
                                                      :
JEROME HAMLIN                                         :     3: 17 CV 1520 (RMS)
                                                      :
v.                                                    :
                                                      :
JAMES MCMAHON                                         :     DATE: DEC. 5, 2019
SCOTT STAFFORD                                        :
                                                      :
------------------------------------------------------x

RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 55)

On September 8, 2017, the plaintiff, incarcerated and *pro se*, commenced this Section 1983, excessive force action against the City of Waterbury, and Waterbury Police Officers James McMahon and Scott Stafford, in their official and individual capacities. (Doc. No. 1). The plaintiff contends that he was driving with his fiancée when he was hit from behind by a police cruiser at a high rate of speed, which caused him to lose control of his vehicle and crash into a utility pole. (Doc. No. 1 at 3). He alleges that while he was tending to his fiancée, who did not survive the crash, he was "struck from behind by the defendants" with a hard object and kicked in his mouth and face. (Doc. No. 1 at 3).

On October 25, 2017, the Court (Meyer, J.) dismissed the City of Waterbury as a defendant and dismissed the plaintiff's claims against the defendant officers in their official capacities. (Doc. No. 8). Additionally, the Court (Meyer, J.) dismissed the plaintiff's "remaining federal law claims against Officers McMahon and Stafford and against the City of Waterbury . . . without prejudice to [the] plaintiff's filing of an amended complaint within 30 days if he believes that there are additional facts that could be alleged in good faith to sustain any of the claims that the Court has dismissed." (*Id.*). The plaintiff did not file an amended complaint. As a result, the only claim that

remains in this case is his Fourth Amendment claim of excessive force against the two individual defendants. (Doc. No. 8).

On March 15, 2018, the Court (Meyer, J.) granted the defendants' motion for enlargement of time for discovery and to file dispositive motions, setting the dispositive motion deadline as August 21, 2018. (Doc. No. 20). Discovery continued, and on August 24, 2018, the Court (Meyer, J.) scheduled a pretrial scheduling conference for September 4, 2018, which was continued several times (*see* Doc. Nos. 30-36, 38-39), until it was held on January 2, 2019. During the call, the Court (Meyer, J.) denied defendants' "motion for leave to file a motion for summary judgment out of time[,]" noting that "[i]f [the] defendants believe that [the] plaintiff's claim is barred by *Heck v. Humphrey*, [512 U.S. 477 (1994),] then [the] defendants may raise this defense at trial on the basis of a full evidentiary record." (*Id.*). On the same day, the Court (Meyer, J.) granted the plaintiff's Motion to Appoint Counsel (Doc. No. 43),[1] and counsel appeared for the plaintiff two weeks later. (Doc. No. 45).

On February 5, 2019, the Court (Meyer, J.) held a telephonic conference with counsel, during which discovery was discussed, and jury selection was set for October 3, 2019. (Doc. No. 48). Six months later, the parties filed their Joint Notice of Consent and Reference of a Civil Action to a Magistrate Judge (Doc. No. 49), and the case was transferred to the undersigned. (Doc. No. 50, 52).

The Court held a telephonic status conference on September 3, 2019, during which defense counsel sought permission to file a motion for summary judgment solely on the ground that the plaintiff's remaining excessive force claim was barred under *Heck v. Humphrey*. The plaintiff's

---

[1] Previously on October 26, 2017 (Doc. No. 9; *see* Doc No. 3), and again on May 31, 2018, the Court (Meyer, J.), denied a motion to appoint counsel for the plaintiff as he had "not yet made a sufficient showing of likely substance to his claim to warrant appointment of counsel at [that] time." (Doc. No. 28; *see* Doc. No. 27).

counsel sought additional time to conduct discovery and objected to the filing of the summary judgment motion based on *Heck* at this stage of the case, given that the Court (Meyer, J.) had previously denied such permission. (Doc. No. 54 at 1). The Court granted the defendants leave to file a motion for summary judgment based on *Heck*, but also provided the plaintiff an opportunity to object both to the untimeliness of the filing and to the underlying relief requested.

The Court extended the discovery deadline to October 9, 2019, and, on September 23, 2019, the defendants filed the pending Motion for Summary Judgment (Doc. No. 55)[2] in which they seek summary judgment on five grounds. Specifically, the defendants argue that there are no material facts in dispute to support a claim by the plaintiff that Officer Stafford and Officer McMahon used excessive force when the plaintiff's vehicle was allegedly struck from behind by the police cruiser operated by Officer McMahon, and that claim is barred under the *Heck* doctrine. Additionally, "[f]or purposes of completeness," the defendants seek summary judgment on the plaintiff's claim against Officer Stafford for failure to intervene in response to Officer McMahon's alleged act of excessive force in hitting the plaintiff's vehicle. The defendants argue that neither Officer McMahon nor Officer Stafford violated the plaintiff's constitutional rights, and thus, qualified immunity applies. The defendants argue that no cause of action exists under the plaintiff's Eighth Amendment claim that the defendants subjected him to cruel and unusual punishment since that claim attached only after conviction. Finally, the defendants seek summary judgment on the plaintiff's deliberate indifference claim as there are no facts which would show deliberate

---

[2]Attached to the defendants' Motion for Summary Judgment is the defendants' Local Rule 56(a)1 Statement ["Def.'s 56(a)1 Stmt"] (Doc. No. 55-1); defendants' brief in support ["Def.'s Mem."] (Doc. No. 55-2); and the following exhibits: copies of excerpts of the plaintiff's deposition, taken on July 13, 2018 (Doc. No. 55-3); copy of the transcript from the plaintiff's August 3, 2016 Sentencing (Doc. No. 55-4); copy of the ambulance report, dated June 14, 2015 (Doc. No. 55-5); copy of emergency room record, dated June 14, 2015 (Doc. No. 55-6); affidavit of James McMahon, sworn to September 16, 2019 (Doc. No. 55-7); and affidavit of Scott Stafford, sworn to September 16, 2019 (Doc. No. 55-8).

indifference on the part of either officer, and the plaintiff cannot demonstrate that treatment for his injuries was denied or delayed.

On October 10, 2019, the plaintiff moved for, and the Court granted, an extension of time to file his response. (Doc. No 57). At the same time, the Court postponed the trial to address the motion. Following a second motion for extension of time, the plaintiff filed his objection to the filing of a dispositive motion, as well as his substantive brief in opposition to the defendants' motion (Doc. Nos. 60-61; *see* Doc. No. 59),[3] in which he argues that the defendants wrongly seek summary judgment on multiple grounds when leave was granted only to address the applicability of *Heck*.

For the reasons set forth below, the defendants' Motion for Summary Judgment (Doc. No. 55) is DENIED.

I. LEGAL STANDARD

The standard for summary judgment is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Tolan v. Cotton*, 572 U.S. 650, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine

---

[3] Attached to the plaintiff's motion is his brief in opposition (Doc. No. 60-1) ["Def.'s Opp."]; his Local Rule 56(a)2 Statement of Facts (Doc. No. 60-2) ["Pl.'s 56(a)2 Stmt"]; an Additional Statement of Material Facts (Doc. No. 60-3); copy of the plaintiff's deposition, taken July 13, 2018 (Doc. No. 60-4) ["Pl.'s Depo."]; and copy of the plaintiff's Complaint (Doc. No. 60-5).

4

dispute of material fact." *Brown v. Eli Lily & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted). This showing may be made by depositions, affidavits, interrogatory answers, admissions, or other exhibits in the record. FED. R. CIV. P. 56(c). "A plaintiff, however, may not rest of the allegations of this complaint as to matters that are controverted by a defendant's properly supported motion for summary judgment." *Knight v. Cerejo*, 2015 WL 893421, at *3 (D. Conn. Mar. 2, 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986)). Stated another way, the party opposing summary judgment "'cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible.'" *Welch-Rubin v. Sandals Corp.*, No. 3:03 CV 481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (quoting *Gottlieb v. Cty of Orange*, 84 F.3d 511, 518 (2d Cir. 1996)). At the summary judgment stage of the proceeding, [p]laintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to back them up, are not sufficient." *Id.* Thus, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 251 (citations and internal quotations omitted omitted) (emphasis in original).

II.  FACTS

The following facts are accepted as true for purposes of the motion for summary judgment.[4]

The plaintiff is currently incarcerated, serving a ten-year sentence following a written nolo plea to one count of Engaging the Police in Pursuit which results in Death, in violation of Conn.

---

[4] The facts are taken from Defendant's Local Rule 56(a)1 Statement of Material Facts, the defendants' affidavits, and attached exhibits, and the plaintiff's Local 56a(2) Statement of Material facts and the plaintiff's deposition transcript.

Gen. Stat. § 14-223(b), and Driving Under the Influence, in violation of Conn. Gen. Stat. § 14-227(a).

The defendants, James McMahon and Scott Stafford, were officers in the Waterbury Police Department on June 13, 2015.

On June 13, 2015, Officer McMahon along with Officer Stafford, were dispatched in a marked Waterbury Police patrol vehicle to a parking lot at 910 Wolcott Street in Waterbury. A large crowd was gathered, and when the defendant officers arrived, they joined other officers already on the scene. Officers McMahon and Stafford observed a blue Honda leaving the parking lot and proceeding south on Wolcott Street. The plaintiff was driving the Honda, and Jasmina Ortiz was a passenger. While the plaintiff was driving south on Wolcott Street, a police vehicle was tailgating his vehicle at a high rate of speed. When the plaintiff noticed the car behind him, which was about fifteen to twenty seconds before the crash, he did not realize it was a police vehicle. According to the plaintiff, the vehicle behind him "tapped one time" the rear of his own vehicle. In addition, he testified that the vehicle behind him "rammed" his vehicle as he was navigating a curved section of the roadway, causing him to lose control and smash violently into a utility pole. The defendants deny ramming the plaintiff's vehicle.

At approximately 11:59 p.m., Officers Stafford and McMahon came upon the blue Honda crashed in the intersection of Wolcott Street and Niagara Street. When the officers arrived, both the plaintiff and Ms. Ortiz were in their respective seats in the vehicle. The plaintiff was severely injured, and Ms. Ortiz was not breathing and had no pulse. The plaintiff was given first aid at the scene until EMS arrived and was evaluated by the fire department or ambulance personnel at the accident scene. Emergency personnel transported both the plaintiff and Ms. Ortiz by ambulance

to St. Mary's Hospital. The plaintiff suffered multiple personal injuries as a result of the crash; Ms. Ortiz passed away from her injuries.

III. DISCUSSION

As an initial matter, the only remaining claim at issue in this case is the excessive force claim against Officers Stafford and McMahon. As discussed above, on October 25, 2017, the Court (Meyer, J.) dismissed the plaintiff's "remaining federal law claims against Officers McMahon and Stafford and against the City of Waterbury . . . without prejudice to [the] plaintiff's filing of an amended complaint within 30 days if he believes that there are additional facts that could be alleged in good faith to sustain any of the claims that the Court has dismissed." (*Id.*). Those "remaining federal law claims" are the plaintiff's claim for a failure to intervene, his Eighth Amendment claim, and his claim for deliberate indifference to medical needs. (Doc. No. 1). The Court did not deny the claims without prejudice to reargue such claims in the face of a more developed record. Rather, the Court denied the claims without prejudice to the plaintiff filing an amended complaint in which additional facts could be alleged to support these remaining federal claims. (*Id.*). The plaintiff did not file an amended complaint, neither in the 30 days as ordered by the Court, nor at any time thereafter. Thus, these claims have been dismissed from this case.

At issue before the Court is the plaintiff's Fourth Amendment excessive force claim. As discussed during the conference call with this Court, held on September 3, 2019, the limited issue for the Court's consideration on summary judgment is the applicability of *Heck v. Humphrey* to this claim. Thus, the plaintiff's objection to the overbreadth of the defendants' motion for summary judgment is well-taken, and, to the extent that the defendants seek permission to file a summary judgment motion raising any additional arguments beyond the applicability of *Heck*, such

permission is denied. Thus, the Court turns to the applicability of *Heck* to the plaintiff's excessive force claim.

The Fourth Amendment to the U.S. Constitution protects the right of persons to be free from unreasonable searches or seizures. As the United States Supreme Court has made clear, "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, . . . of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). "The Fourth Amendment is violated if the police use excessive force on a free person in the course of an arrest or other law enforcement action." *Hamlin v. City of Waterbury*, No. 3:17 CV 1520 (JAM), 2017 WL 4869116, at *2 (D. Conn. Oct. 25, 2017) (citing *Graham*, 490 U.S. 386). A Fourth Amendment seizure may occur whether there is "a government termination of freedom of movement *through means intentionally applied*." *Brower v. Cty of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original). Thus, the intentional use of a police car to stop a moving vehicle by causing that vehicle to crash, thereby terminating a suspect's freedom of movement, could constitute a seizure in violation of the Fourth Amendment. *Id.*

In this case, the plaintiff testified at his deposition that he noticed a car tailgating him right before he crashed – "maybe 15 or 20 seconds" before he crashed – but he claims he did not know it was a police car. (Pl.'s Depo. at 30, 33-34, 71, 73). Additionally, according to the plaintiff, he could not see if the car had overhead lights on because "[i]t was too fast." (*Id.* at 31). As the plaintiff described it, "[A]ll of a sudden [he was] tapped and [he was] into the pole." (*Id.*). The plaintiff testified that, as a result of his vehicle crashing into the pole, he broke his leg, "messed up [his] hand," and received "some gashes . . . on [his] forehead." (*Id.* at 39). According to the plaintiff, right after the accident, he got out of his car to help his fiancée, and he was struck from

behind by the defendant officers, knocked to the ground, and kicked in his mouth and face, causing him to lose consciousness. (*Id.* at 40-41). The defendants argue that there are no material facts in dispute to support the plaintiff's claim of excessive force and that any claim that his vehicle was allegedly struck from behind by the police cruiser is barred by the *Heck* doctrine. (Doc. No. 55 at 4).[5]

In *Heck*, the petitioner had been convicted of voluntary manslaughter in state court, and, while in prison, he filed suit under section 1983 against the prosecutors and investigators in his case alleging that they committed various improprieties related to evidence in his trial. 512 U.S. at 478-79. The U.S. Supreme Court affirmed the dismissal of Heck's case, holding that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Heck*, 512 U.S. at 486-87 (emphasis in original). Thus, the Supreme Court's decision in *Heck v. Humphrey* "forecloses a prisoner's use of a § 1983 action to 'end run' the procedural requirements of a direct appeal of habeas corpus petition in order to challenge a conviction." *McKay v. East Hartford Police Dept.*, No. 3:16 CV 1954 (JAM), 2017 WL 4247383, at *3 (D. Conn. Sept. 25, 2017).

The application of the principles articulated in *Heck* requires the court to "examine the relationship between the criminal conviction and each of the plaintiff's civil claims." *Jackson v. Suffolk Cty. Homicide Bureau*, 135 F.3d 254, 256 (2d Cir. 1998). In this case, the plaintiff was

---

[5] The defendants do not address the applicability of *Heck* to the plaintiff's claim that the officers exercised excessive force in assaulting him following the crash.

9

convicted and sentenced in the Waterbury Judicial District to ten years in jail on charges of causing death by increasing the speed of his motor vehicle to evade the police, in violation of Conn. Gen. Stat. § 14-223(b),[6] and illegal operation of a motor vehicle while under the influence of alcohol or drugs ("DUI"), in violation of Conn. Gen. Stat. § 14-227a.[7] As to the DUI charge, the alleged actions of the defendant police officers could not invalidate or undermine the plaintiff's violation of Conn. Gen. Stat. § 14-227(a). The plaintiff had a blood alcohol level of .14 "a short time after the accident when he was treated at the hospital." (Doc. No. 55-4 at 5). None of the alleged actions by the officers in this case would change that conviction. Thus, *Heck* does not apply to the DUI conviction.

The plaintiff's conviction under Conn. Gen. Stat. § 14-223(b), however, presents a closer call. If the plaintiff succeeds in his claim that the officers struck his vehicle,[8] and that this specific use of force during the pursuit caused the fatal accident, it would certainly undermine the felony

---

[6] Section 14-223(b) of the Connecticut General Statutes provides:

> No person operating a motor vehicle, when signaled to stop by an officer in a police vehicle using an audible signal device or flashing or revolving lights, shall increase the speed of the motor vehicle in an attempt to escape or elude such police officer. Any person who violates this subsection shall be guilty of a class A misdemeanor, except that, if such violation causes the death or serious physical injury, as defined in section 53a-3, of another person, such person shall be guilty of a class C felony . . . .

[7] Section 14-227a of the Connecticut General Statutes governs the operation of a motor vehicle under the influence or while having an elevated blood alcohol content, as follows:

> No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if such person operates a motor vehicle (1) while under the influence of intoxicating liquor or any drug or both, or (2) while such person has an elevated blood alcohol content. For the purposes of this section, "elevated blood alcohol content" means a ratio of alcohol in the blood of such person that is eight-hundredths of one per cent or more of alcohol, by weight, except that if such person is operating a commercial motor vehicle, "elevated blood alcohol content" means a ratio of alcohol in the blood of such person that is four-hundredths of one per cent or more of alcohol, by weight, and "motor vehicle" includes a snowmobile and all-terrain vehicle, as those terms are defined in section 14-379.

[8] As discussed above, the defendant officers deny that they rammed the plaintiff's vehicle. (Pl.'s 56(a)2 Stmt ¶ 14; Def.'s 56(a)1 Stmt ¶ 14).

conviction under Conn. Gen. Stat. § 14-223(b) for causing the death of a passenger by engaging the police in a high-speed chase. A finding that the officers, and not the plaintiff, who was under the influence of alcohol or drugs, and who entered a nolo plea to speeding to evade the police, caused the fatal accident, would negate the basis for the plaintiff's conviction. Thus, that claim is barred by *Heck*. The inquiry does not end there, however.

"The rule of *Heck v. Humphrey* does not ordinarily bar a claim that the police used excessive force against a civil rights plaintiff, even if the excessive force occurred in the midst of an arrest that eventually led to a successful conviction." *See McKay*, 2017 WL 4247383, at *3; *see also Jackson*, 135 F.3d at 257 (finding excessive force claim under § 1983 not barred as "lack[ing] the requisite relationship to the conviction"). Thus, an excessive force claim would not be precluded by *Heck* unless the "facts actually determined in his criminal convictions that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit." *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000); *see Sampson v. Pia*, No. 3:15 CV 359 (SRU), 2017 WL 1138127, at *7 (D. Conn. Mar. 27, 2017); *see also Channer v. Mitchell*, 43 F.3d 786, 787–88 (2d Cir.1994) (per curiam) (affirming *Heck*-based dismissal of claim that police officers committed perjury and coerced witnesses to identify plaintiff wrongfully, but reversing *Heck*-based dismissal of Eighth Amendment claim that plaintiff had been placed in a holding cell under inhumane conditions); *Smithart v. Towery*, 79 F.3d 951, 952–53 (9th Cir.1996) (per curiam) (affirming *Heck*-based dismissal of § 1983 claim of conspiracy to "bring unfounded criminal charges" against plaintiff, but reversing *Heck*-based dismissal of claim of excessive force during arrest).

The § 14-233(b) offense to which the plaintiff pleaded nolo contendere required proof that he (1) increased his speed (2) when signaled to stop by a police officer using an audible signal or

11

revolving lights and, in doing so, (3) caused the death of another person. CONN. GEN. STAT. § 14-223(b). As part of this case, the plaintiff testified at his deposition that the defendant officers did not have their lights on and that he did not know a police vehicle was behind him. (Pl.'s Depo. at 30-31). The plaintiff, however, entered a written nolo plea for speeding to evade a police vehicle using a signal or light, and at his sentencing, he acknowledged that "at one point the police . . . turned off their . . . sirens and lights." (Doc. No. 55-4 at 5). The plaintiff cannot claim now that the actions of the police in turning off their lights prior to the alleged tapping of his vehicle constitutes excessive force, as that, too, would undermine the conviction, or in this case, his plea. (*See* Doc. No. 55-4 at 9-10). Moreover, to the extent that the plaintiff testified at his deposition that he was not speeding, was driving "45 miles an hour" and was "not fleeing from the police[]" (Pl.'s Depo. at 31),[9] and offers these facts to support a claim that the officers' alleged action of tapping his vehicle constituted excessive force, this claim, when set forth in this manner, would undermine his plea to the § 14-233(b) violation. Moreover, to the extent that the plaintiff now claims that the officers' alleged tapping of his vehicle caused the death of Ms. Ortiz, that claim would likewise invalidate the plaintiff's § 14-233(b) conviction and is, therefore, barred under *Heck*.

If, however, a jury were to conclude that the plaintiff was indeed speeding to evade the officers and that the officers tapped the back of his vehicle, thereby causing injury to the plaintiff himself, that excessive force claim would not invalidate the elements of the underlying § 14-223(b) conviction. Under those circumstances, the plaintiff's § 14-223(b) conviction would not be

---

[9] While he testified that he was not fleeing from the police and was driving 45 miles an hour, the plaintiff also testified that the police vehicle that was tailgating his vehicle was traveling at a "high rate of speed[,]" and that the tailgating vehicle was going "too fast" for him to be able to tell if the vehicle had on its overhead lights. (Pl.'s Depo. at 31; *see* Pl.'s 56(a)2 Stmt ¶ 9; Def.'s 56(a)1 Stmt ¶ 9). It defies logic that the tailgating vehicle could travel at a high rate of speed, but that the vehicle being tailgated would be traveling at or close to the speed limit. That said, because the issue before the Court is the applicability of *Heck*, the Court declines to address further the evidence underlying the plaintiff's claim.

undermined by a finding that the officers' use of a police vehicle to hit another vehicle constituted the use of excessive force by the defendant officers. A jury could conclude that the officers tapped or rammed the plaintiff's vehicle and that this action was not reasonable under the circumstances. Such a finding would not invalidate the plaintiff's conviction under § 14-223(b).

Thus, although *Heck* bars many of the theories under which the plaintiff asserts his excessive force claim, the *Heck* doctrine does not foreclose a claim of excessive force in its entirety.[10] Moreover, a finding that the defendant officers used excessive force following the car chase and subsequent crash by allegedly striking the plaintiff from behind and kicking him in his mouth and face causing him to lose consciousness, would not invalidate his conviction, and, thus, would not be barred by *Heck*.

Case law supports the conclusion that an excessive force claim may not barred under *Heck* even when force is used, and that force directly relates to the underlying conviction. In *Jackson*, the plaintiff alleged that the defendant-officers used excessive force to coerce him to make confessions that were then used against him at his criminal trial. *Jackson*, 135 F.3d at 257. The Second Circuit held that, under those circumstances, a finding that "excessive force had in fact been used would not necessarily require the invalidation of the conviction[]" because the "state court might find that the confessions did not result from the use of force[,]" or "it might find that the confessions were coerced by the use of force, but that the failure to suppress them was harmless error[.]" *Id.*

Seven years later, this court closely examined the relationship between the conviction for assault on an officer and an excessive force claim arising out of that arrest, a scenario far more

---

[10] The Court limits its consideration to the applicability of the *Heck* doctrine to the plaintiff's excessive force claim. The plaintiff must still satisfy his burden of proving the underlying facts which, to this point, are only supported by his self-serving statements.

13

related to the underlying conviction than the circumstances of this case. In *Powell v. Scanlon*, 390 F. Supp. 2d 172, 178-79 (D. Conn. 2005), Powell, who was serving a five-year sentence for possession of narcotics and assault of a police officer, asserted claims against the arresting officers for the use of excessive force during the arrest. The court held that *Heck* did not bar an excessive force claim arising out of a conviction for assault on a police officer. In that case, the court "believe[d] that . . . a conviction for assault on a police officer would not necessarily be impugned by a finding of excessive force[,]" as the "conviction of assault on a police officer could be considered a factor in determining how much force was reasonable[.]" *Id.* The court concluded that a jury "could still find that, under the circumstances, the amount of force used by that officer or other officers in effecting the arrest was unreasonable." *Id.*; *see also Shapard v. Attea*, 710 F. App'x 15, 17-18 (2d Cir. Oct. 12, 2017) (summary order) (reversing district court's *sua sponte* dismissal of excessive force claim under *Heck* on grounds the plaintiff's claim of excessive force against officers he was convicted of assaulting can be reconciled as the use of force by the officers may still be excessive).

In this case, to the extent that the plaintiff is seeking damages based on injuries sustained from force allegedly used by the officers after the accident, such a claim is not precluded by *Heck*. The plaintiff's success on a claim that the defendant officers acted unlawfully by assaulting him following the crash would not invalidate his § 14-223(b) conviction. *See McKay*, 2017 WL 4247383, at *3 (holding that "even if the excessive force occurred in the midst of an arrest that eventually led to a successful conviction[,] . . . a finding that the police used excessive force is collateral to the grounds for conviction and does not usually cast doubt upon the basis and admissibility of evidence used to establish a criminal conviction"). Moreover, in light of the Court's limited grant of leave to file a summary judgment motion addressing the applicability of

the *Heck* doctrine, the Court declines to address whether the plaintiff can ultimately establish this claim, particularly given the fact that he admitted, as an undisputed fact, that when the officers encountered the plaintiff following the crash, he and Ms. Ortiz were "still in the vehicle in their respective seats."[11] (Pl.'s 56(a)2 Stmt ¶ 17; Def.'s 56(a)1 Stmt ¶ 17). Additionally, in light of the procedural posture of this case, the Court declines to address whether qualified immunity applies to the officers' alleged actions. Thus, while the Court concludes that *Heck* does not serve as a bar to the plaintiff's excessive force claim, the Court does not reach the issue of whether the plaintiff has presented evidence to defeat summary judgment on the underlying excessive force claim.[12]

## IV. CONCLUSION

Accordingly, this Court concludes that the defendants' Motion for Summary Judgment (Doc. No. 55) must be DENIED.

Dated at New Haven, Connecticut, this 5th day of December, 2019.

　　　　　　　　　　　　　　　　　　/s/ Robert M. Spector　　　　　　
　　　　　　　　　　　　　　　　　Robert M. Spector
　　　　　　　　　　　　　　　　　United States Magistrate Judge

---

[11] The plaintiff admits that fact is undisputed, yet goes on to claim that, despite his serious injuries suffered in the crash, including a broken femur, he got out of the car and was walking over to tend to Ms. Ortiz when he was assaulted by the officers. (Pl.'s Depo. at 41-42, 44). Additionally, the ambulance report documented the accident scene, in relevant part, as follows: "Arrived to find [sic] year old male supine on road. Pt is alert and oriented to person, place, time, event. . . . FD removed Pt from vehicle to render care. Positive for loss of consciousness. Pt complains of right hip pain." (Doc. No. 55-5).

[12] As discussed above, summary judgment cannot be defeated by "relying on the allegations in [the] pleading[s], or on conclusory statements, or on mere assertions . . . .'" *Welch-Rubin*, 2004 WL 2472280, at *1 (quoting *Gottlieb*, 84 F.3d at 518). The Court's consideration is limited, however, to the issue of the applicability of the *Heck* doctrine to this claim.